STATE OF MICHIGAN

IN THE 31st JUDICIAL CIRCUIT COURT FOR THE COUNTY OF ST. CLAIR

| | |
|---|---|
| CANADIAN NATIONAL RAILWAY COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NOS, 1814950, 1814958, 1814959, 1814960, 1814961, 1814963, 1814973; AMERICAN INTERNATIONAL GROUP UK LIMITED, f/k/a AIG EUROPE LIMITED; AXA XL, f/k/a XL INSURANCE AMERICA, INC.; ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA; STARR INSURANCE & REINSURANCE LIMITED; HDI SPECIALTY INSURANCE COMPANY; ASSICURAZIONI GENERALI S.p.A.; IRONSHORE INSURANCE LTD.; and OIL CASUALTY INSURANCE, LTD., as Subrogees of Canadian National Railway Company, <br><br> Plaintiffs, <br><br> v. <br><br> THE DAVID J. JOSEPH COMPANY, <br><br> Defendant. | Case No. 21-001180-CB <br> Hon.: <br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT** |

Bruce N. Moss (P36588)
DENENBERG TUFFLEY PLLC
28411 Northwestern Hwy., Suite 600
Southfield, Michigan 48034
(248) 549-3900; (248) 593-5808 (fax)
bmoss@dt-law.com
*Attorneys for Plaintiffs*

Plaintiffs verify that this action is comprised of business or commercial disputes, as defined in MCL 600.8031(1)(c), in which the amount in controversy exceeds $25,0000 and meets the Statutory requirement to be assigned to the Business Court.

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED

## PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COME Plaintiffs, CANADIAN NATIONAL RAILWAY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NOS. 1814950, 1814958, 1814959, 1814960, 1814961, 1814963, 1814973; AMERICAN INTERNATIONAL GROUP UK LIMITED, f/k/a AIG EUROPE LIMITED; XL INSURANCE AMERICA, INC.; ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA; STARR INSURANCE & REINSURANCE LIMITED; HDI SPECIALTY INSURANCE COMPANY; ASSICURAZIONI GENERALI S.p.A.; IRONSHORE INSURANCE LTD. and OIL CASUALTY INSURANCE, LTD., as Subrogees of Canadian National Railway Company, by and through their attorneys, Denenberg Tuffley, PLLC, and state as follows for their First Amended Complaint against Defendant THE DAVID J. JOSEPH COMPANY:

## PARTIES

1. That at all times material hereto, Plaintiff, CANADIAN NATIONAL RAILWAY COMPANY (hereinafter referred to as "CN" and/or "Plaintiff" and/or "Insured"), is a corporation incorporated under the laws of Canada with a head office in Montreal, Quebec. CN is engaged in the business of providing freight railway transportation services through Canada and the United States.

2. That at all times material hereto, Plaintiffs CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NOS. 1814950, 1814958, 1814959, 1814960, 1814961, 1814963, 1814973 are foreign organizations and underwriters of insurance policies. Underwriters are comprised of a group of syndicates acting by and through their appointed active underwriters and with a principal place of business in and around 1 Lime Street, London, England, and authorized to write policies of insurance in Canada and the United States.

3. That at all times material hereto, Plaintiff AMERICA INTERNATIONAL GROUP UK LIMITED, is an insurance company authorized to write policies of insurance in Canada and the United States.

4. That at all times material hereto, Plaintiff AXA XL, f/k/a XL INSURANCE AMERICA, INC, is an insurance company authorized to write policies of insurance in Canada and the United States.

5. That at all times material hereto, Plaintiff ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA, is an insurance company authorized to write policies of insurance in Canada and the United States.

6. That at all times material hereto, Plaintiff STARR INSURANCE & REINSURANCE LIMITED is an insurance company authorized to write policies of insurance in Canada and the United States.

7. That at all times material hereto, Plaintiff HDI SPECIALTY INSURANCE COMPANY, is an insurance company authorized to write policies of insurance in Canada and the United States.

8. That at all times material hereto, Plaintiff ASSICURAZIONI GENERALI S.p.A., is an insurance company authorized to write policies of insurance in Canada and the United States.

9. That at all times material hereto, Plaintiff IRONSHORE INSURANCE LIMITED is an insurance company authorized to write policies of insurance in Canada and the United States.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

10. That at all times material hereto, Plaintiff OIL CASUALTY INSURANCE, LTD., is an insurance company authorized to write policies of insurance in Canada and the United States.

11. Plaintiffs, CANADIAN NATIONAL RAILWAY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NOS. 1814950, 1814958, 1814959, 1814960, 1814961, 1814963, 1814973; AMERICAN INTERNATIONAL GROUP UK LIMITED, f/k/a AIG EUROPE LIMITED; XL INSURANCE AMERICA, INC.; ROYAL & SUN ALLIANCE INSURANCE COMPANY OF CANADA; STARR INSURANCE & REINSURANCE LIMITED; HDI SPECIALTY INSURANCE COMPANY; ASSICURAZIONI GENERALI S.p.A.; IRONSHORE INSURANCE LTD. and OIL CASUALTY INSURANCE, LTD are hereinafter referred to as "Property Insurers".

12. That at all times material hereto, Defendant, The David J. Joseph Company (hereinafter referred to as "DJJ" and/or "Defendant"), is a corporation organized pursuant to the laws of the State of Delaware.  DJJ carries on business throughout the United States of America and operates in a number of sectors, including scrap metal recycling.  DJJ is authorized to do business in the County of St. Clair, State of Michigan, and its principal place of business is located at 300 Pike Street, Cincinnati, Ohio 45202 with its registered agent located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

13. The cause of action, as alleged in this Complaint, arose in whole or in part in the County of St. Clair, State of Michigan.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

14. The damages that occurred in this action exceed Twenty-Five Thousand Dollars ($25,000.00).

15. That jurisdiction and venue are proper in this Court.

## FACTS AND GENERAL ALLEGATIONS

16. DJJ owns and leases a fleet of railcars and was at all material times the owner of a railcar identified as DJJX30478 ("Railcar 30478").

17. Railcar 30478 was an open top gondola manufactured in 1978 by Berwick Forge. It was purchased in used condition by DJJ in 2012 having been used for utility coal service, and thereafter used by DJJ for transporting scrap iron and steel.

18. Prior to placing Railcar 30478 into service with CN, DJJ designed, engineered and modified Railcar 30478.

19. That prior to June 28, 2019, CN contracted with DJJ to transport railcars belonging to DJJ, including Railcar 30478, across CN's railroad system.

20. Effective March 1, 2019 through February 29, 2020, CN and DJJ were parties to a Confidential Transportation Agreement identified as CN 518160-AJ-0001. (the "Contract"). The Agreement is in the custody of Defendant.

21. At all material times, it was an express or implied term of the Contract that DJJ would only put railcars onto CN's network that were:

    a. compliant with all applicable standards;

    b. fit for intended use on a railroad under normal operating conditions; and

    c. properly inspected and maintained in accordance with industry standards.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

22. On the evening of June 27, 2019, CN train M38331-27 (the "Train") departed MacMillan Yard located in Vaughan, Ontario and traveled westbound toward Port Huron, Michigan.

23. The Train stopped in Sarnia, Ontario on the morning of June 28, 2019. The Train's consist was partially changed in Sarnia and the Train departed for Port Huron via the Sarnia Tunnel (the "Tunnel").

24. For this stage of the Train's route, it consisted of 140 railcars including Railcar 30478. The railcars represented 125 loaded cars, 12 empty cars and three residue cars with two head end locomotives and one distributed power locomotive.

25. The Train traveled into the Tunnel in the ordinary course and was operated at all times in accordance with applicable standards, regulations and CN protocols. Soon after the head of the train passed the midway point of the Tunnel, the Train initiated emergency brake application.

26. Investigation following the Derailment revealed that the railcars in positions 52 through 98 of the Train had derailed (the "Derailment").

27. Among the railcars that derailed was the railcar in position 68, which was a tank car carrying approximately 13,000 gallons of sulfuric acid that had been breached and released causing extensive environmental contamination.

28. Investigation following the Derailment further disclosed that Railcar 30478 had several defects, including cracks in the welds that secured the shear plate to the stub sill and cracks where the stub sill connects to the side sill (the "Defects").

29. The Defects negatively impacted Railcar 30478's ability to transfer in-train forces.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

30. Railcar 30478 was the initial railcar to derail, and this occurred by reason of a sustained structural failure of the A-end of Railcar 30478. This premature failure of Railcar 30478 was the result of the Defects.

31. Railcar 30478 was only able to withstand approximately 40% of the car design threshold outlined by the Association of American Railroads (the "AAR") Manual of Standards and Recommended Practices ("MSRP"), Specification M-1001.

32. DJJ knew or ought to have known the Railcar 30478 was structurally defective and could not withstand normal foreseeable in-train forces.

33. The MSRP, including Specification M-1001, represents industry standards across North America and Railcar 30478 should have been compliant with the MSRP, including Specification M-1001. However, it was not in compliance.

34. The in-train forces in the Tunnel were reasonable at all material times; however, Railcar 30478 failed because of the Defects. If Railcar 30478 had been compliant with the MSRP specification M-1001 threshold then Railcar 30478 would not have failed and the derailment would not have occurred.

35. As a result of the Derailment, CN suffered uninsured losses in excess of Twenty Million Dollars ($20,000,000).

36. As a result of the Derailment, CN made a claim to its Property Insurers and the Property Insurers will pay in excess of Twenty Million Dollars ($20,000,000) and therefore the Property Insurers are subrogated to the rights of their Insured up to the amount of said payments.

**COUNT I – NEGLIGENCE**

37. That Plaintiffs allege and incorporate by reference paragraphs 1 through 36, the same as if incorporated herein verbatim.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

38. That Defendant was under a duty of care to ensure that its railcars, including Railcar 30478, were fit for use and posed no danger to CN's operations, and the public, when used under normal operating conditions.

39. That Defendant breached its duty of care to CN, itself and by and through its agents and employees, and that the breaches directly caused CN's Loss, including one or more of the following negligent acts and/or omissions:

  a. its use of railcars including Railcar 30478 that were defective, secondhand, compromised and unfit for their intended purpose;

  b. its failure to publicly advise of the dangers presented by its railcars, including Railcar 30478, and in particular, to advise CN;

  c. its failure to share information with CN about the structural integrity of its railcars, including Railcar 30478;

  d. its failure to ensure that its railcars, including Railcar 30478, complied with industry standards and all applicable norms;

  e. its failure to detect the Defects;

  f. its failure to have a regular system of inspection and maintenance of its railcars, including Railcar 30478;

  g. its failure to train employees to conduct a regular system of inspection and maintenance of its railcars including Railcar 30478;

  h. its failure to hire competent and qualified employees to conduct a regular system of inspection and maintenance of its railcars including Railcar 30478;

  i. its failure to properly design, engineer and otherwise modify Railcar 30478 prior to placing it on CN's railway to assure that is was structurally sound;

  j. its failure to properly inspect and test the Railcar 30478 after performing modifications; and

  k. its failure to warn that its modifications rendered Railcar 30478 unsafe.

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

40. The acts, omissions and breaches of the standard of duty and care, as described herein, proximately caused Plaintiff CN and Property Insurers to be damaged in an amount in excess of Forty Million Dollars ($40,000,000).

WHEREFORE, Plaintiffs, Canadian National Railway Company and Property Insurers, as Subrogees of Canadian National Railway Company demand judgment against Defendant The David J. Joseph Company in an amount in excess of Forty Million Dollars ($40,000,000), to be determined by the trier of fact, together with costs, statutory prejudgment and post-judgment interest, and attorney fees wrongfully incurred as a result of the acts of Defendant.

### COUNT II – BREACH OF CONTRACT AND IMPLIED WARRANTY

41. That Plaintiffs allege and incorporate by reference paragraphs 1 through 40, the same as if incorporated herein verbatim.

42. That prior to June 28, 2019, CN entered into a Contract with Defendant DJJ in which Railcar 30478 was placed into service on CN's network, including for transportation between Ontario and Michigan at the time of derailment.

43. CN performed all its obligations under said Contract.

44. Defendant DJJ was obligated to place a railcar in a good and workmanlike manner, free from defect or safety hazard.

45. That Defendant breached its duties under the Contract and warranty of fitness for a particular purpose, due to the following acts and/or omissions:

    a. it did not comply with all applicable standards;

    b. was not fit for intended use on a railroad under normal operating conditions;

    c. was not properly inspected and maintained in accordance with industry standards;

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**

      d.      was not able to withstand reasonable forces;

      e.      was defective and/or presented a danger for CN's operations; and

      f.      otherwise breached express and/or implied terms of the Contract.

46. The Defendant's breaches of contract and warranty caused direct and consequential damages to Plaintiff CN and Property Insurers, in an amount in excess of Forty Million Dollars ($40,000,000).

WHEREFORE, Plaintiffs, Canadian National Railway Company and Property Insurers, as Subrogees of Canadian National Railway Company demand judgment against Defendant The David J. Joseph Company in an amount in excess of Forty Million Dollars ($40,000,000), to be determined by the trier of fact, together with costs, statutory prejudgment and post-judgment interest, and attorney fees wrongfully incurred as a result of the acts of Defendant.

    Respectfully submitted.

    **DENENBERG TUFFLEY, PLLC**

By:    */s/ Bruce N. Moss*
    Bruce N. Moss (P36588)
    28411 Northwestern Hwy., Ste. 600
    Southfield, MI 48034
    248-549-3900 / 248-593-5808 (fax)
    bmoss@dt-law.com

Dated: July 8, 2021    *Attorneys for Plaintiff*

**RECEIVED JAY M. DEBOYER 07-08-2021 11:17:18 CLERK OF THE 31ST CIRCUIT COURT - FAX FILED**